MERCHANTS' NATIONAL BANK OF LITTLE ROCK *v.* THE COUNTY
OF PULASKI.

*(Circuit Court, E. D. Arkansas.* April, 1880.)

COUNTY BONDS—NEW BONDS IN LIEU OF OLD—FAILURE OF COUNTY TO
CARRY OUT AGREEMENT—PROPER REMEDY.—Bonds were issued by a
county, under an act of the legislature, making it obligatory on the
county to levy an annual tax sufficient to pay the interest on the bonds
as it accrued, and the principal at maturity. Afterwards, the county
proposed to the holders of such bonds that if they would scale them 25
per cent., and take new bonds for the reduced sum, the county would
annually levy and collect a sufficient tax to pay the interest on the new
bonds as it accrued, and the principal at maturity, and that if it failed
to do so the holders of the new bonds should be restored to all their
rights under the old bonds. New bonds were issued under this agree-
ment, but the county failed to pay the interest thereon, and by reason of
the terms of the act under which they were issued could not levy a tax
for that purpose. *Held,* an action at law could be maintained on the
original bonds, and that a bill in equity, not seeking for any discovery,
would not lie.

SURRENDER OF VALID EVIDENCE OF INDEBTEDNESS FOR ONE THAT IS IN-
VALID—EFFECT.—Where a valid evidence of indebtedness issued by a
county is surrendered by the holder to the county, and a new evidence
of debt issued therefor, which is invalid, the legal rights of the creditor
are not affected thereby

Demurrer to Bill.

Prior to the twenty-ninth of May, 1878, the complainant was
the holder and owner of divers bonds of the defendant cor-
poration, amounting in the aggregate, including interest, to the
sum of about $43,000. These bonds were of two classes:
*First,* bonds issued in pursuance of the provisions of the
act of the general assembly of the state entitled "An act to
authorize certain counties to fund their outstanding indebt-
edness," approved April 29, 1873; *second,* bonds issued
under the provisions of an act of the general assembly of
this state entitled "An act to authorize the several counties
in the state to fund their outstanding indebtedness," ap-
proved March 6, 1875, and an act supplementary thereto.

By an act of the general assembly of Arkansas, approved
March 6, 1877, (Acts 1877, p 21,) the several counties of

the state were authorized to fund their outstanding indebtedness.

Under the provisions of this act the complainant and defendant made an adjustment and compromise, whereby the complainant agreed, upon certain conditions, to remit 25 per cent. of its claim upon all of said bonds of both classes, and the defendant agreed to issue new bonds for the balance due after such remission; and also agreed that it would annually levy a tax of one-half of 1 per cent. per annum upon all the taxable property of said county, to pay interest and principal of such new bonds. It was further agreed that if such county should make default in the payment of any instalment of interest when due, or of the principal of said new bonds, for a period of 60 days, that the said county of Pulaski should forfeit the 25 per cent. remitted, and would pay the holder of such new bonds the full amount of the original indebtedness for which they had been issued, and that the acceptance of the new bonds was not to discharge or release said county from any portion of its original indebtedness, unless the interest on said new bonds and the principal thereof should be paid at maturity.

In pursuance of this agreement, new bonds were issued, containing on their face the following stipulation: "The person to whom this bond is issued having, at the request of said county and its authority, made a concession and reduction of 25 per centum of the principal and interest of the bonds presented for funding, the county of Pulaski hereby pledges and binds itself to pay the principal and interest of this bond, as the same becomes due and payable, and to annually levy a tax, payable only in the lawful money of the United States, and faithfully apply the same, when collected, to the principal and interest of this bond; and it is hereby stipulated that this bond is not to be a waiver by the holder thereof of any of the provisions of the act under which the surrendered bonds were issued, and that this bond preserves the obligation of the contract of each and all of said bonds as fully as if set forth herein."

The old bonds were delivered to defendant, and new bonds

issued to complainant for the amount of its original claim, less the 25 per cent. remitted.

Default for more than 60 days has been made in the payment of the interest on these new bonds, and the county court of Pulaski county has refused to levy the tax provided for in said agreement.

These are the principal facts as averred in the bill and amended bill, which, for our present purpose, are to be taken as true.

It is, however, further averred that the supreme court of the state of Arkansas has declared that the county of Pulaski has no power or authority to levy a special tax of any amount to pay interest upon the bonds issued under the aforesaid act of March 6, 1877, entitled "An act to authorize the counties in this state to fund their outstanding indebtedness," etc.; and that said court has determined that the obligation of the contract, and the taxing power, which were in force and effect at the time of the issue of the surrendered bonds, cannot be carried into the bonds issued under the last recited act.

Complainant now brings into court the new bonds and tenders them to defendant, and claiming its rights under the old bonds, and the agreement of compromise, prays a decree for $43,026.13, that being the amount of the indebtedness now claimed as due and unpaid on the old bonds and interest.

McCRARY, C. J. The demurrer raises the question whether the complainant has an adequate remedy at law? The new bonds, as already stated, were given in lieu of two classes of bonds previously held by the complainant. I will consider the demurrer as it relates to both classes.

1. As to the first class, to-wit, bonds issued under the act of April 29, 1873, the contention of the complainant is that by the construction placed by the supreme court of Arkansas upon the act of March 6, 1877, it is deprived of the right to sue at law and recover judgment upon its debt, and to enforce the payment of the same by levy and collection of the taxes which the county agreed to levy and collect for that purpose, to-wit, such taxes as were authorized by law when the original bonds were issued. The decision referred to is.

in the case of *Brodie et al.* v. *McCabe, Collector,* (not yet reported,) which was a proceeding by tax payers to enjoin the levy and collection of taxes in excess of the maximum allowed by the Arkansas constitution of 1874.

Section 9 of article 16, of that constitution, provides as follows: "No county shall levy a tax to exceed one-half of 1 per cent. for all purposes; but may levy an additional one-half of 1 per cent. to pay indebtedness existing at the time of the ratification of this constitution."

Section 6 of the act of March 6, 1877, under which complainant's bonds were funded, and the new bonds now held by it were issued, provides that "it shall be the duty of the county courts issuing bonds under the provisions of this act to levy a special tax of sufficient amount to pay the principal and interest of said bonds as they shall become due, not to exceed the limit of taxation, together with all other taxes levied during that year, prescribed in the constitution of the state."

In commenting upon that clause of the act, the supreme court of Arkansas, in the case *supra,* observe that "those who took or might take these bonds evidently submitted to the constitutional limit of taxation under the present constitution;" and undoubtedly such is the fair presumption, unless the contrary is made to appear in any given case by the terms of the contract. It does not appear that any of the bonds issued under the act in question were before the court, and it certainly was not called upon to construe, and did not assume to pass upon, the written contracts under which the complainant claims. The most the court could have intended to assert is that where a creditor of the county funds has bonds under the act of 1877, without any stipulation preserving the obligation of the original contract, those obligations are waived and substituted by such as are consistent with the constitution of 1874. But it was clearly within the power of the parties to agree that the non-payment of the compromise bonds, or of the interest thereon, for a specified period, should annul the new bonds, and restore the parties to their rights before the agreement of compromise was entered into.

Such an agreement was not beyond the powers of the defendant corporation, as insisted by counsel for the defence. It would be an unwarranted enlargement of the doctrine of *ultra vires,* to hold that a municipal corporation owing an admitted, valid debt, and having the power to pay or compromise the same, may not bind itself by the terms of such a compromise agreement as that set out in the bill, and shown by the exhibits, in this case. What is that agreement? It is that the complainant shall remit 25 per cent. of its demand, and take new bonds for the balance, upon the condition that, if the new bonds are not met, interest and principal, as they mature, "their acceptance shall not discharge or release said county from any portion of its original indebtedness," and that the acceptance of the new bonds "is not to be a waiver by the holders thereof of any of the provisions of the act under which the surrendered bonds were issued." In other words, it was plainly a conditional settlement, to be void if not complied with by the county. By complying with it the county can save 25 per cent. of the amount of the original debt. By default, it clearly becomes liable to pay the whole amount of the original debt, and also to levy all such taxes as were authorized by law, at the time the original bonds were issued, to raise funds for their payment.

It is well settled that where bonds of a county or municipality are issued under authority of law and payable out of the proceeds of taxation, the law providing for such taxation enters into and becomes part of the contract, and cannot be subsequently repealed by the legislature or changed by constitutional amendment so as to deprive the bond holder of his remedy. At the time of the contract of compromise, therefore, the complainant had a perfect right to demand the levy for the payment of his bonds of whatever taxes were authorized by law for that purpose when such bonds were issued, even if the same should exceed the limit prescribed by the constitution of 1874. It is also well settled that a change in the form of the contract, or the substitution of one evidence of debt for another, does not ordinarily change the rights of parties.

The complainant's debt against the county remained the same debt notwithstanding the substitution of the new bonds for the old. It was, therefore, perfectly competent for the county to agree to the conditions to which I have adverted, and which are plainly stated in the writing set out with the bill. Whether, under the decision of the supreme court of the state, it is now within the power of the county court to levy and collect the taxes necessary to meet the interest on the compromise bonds, is immaterial. The contract in effect was that a failure on the part of the county, from any cause, to meet the interest or principal of said bonds, should render the compromise void, and leave the parties in the enjoyment of their rights under the original contract. A court of equity can never hold that the contract of compromise was effectual for the purpose of taking away the remedies existing under the original contracts, and not effectual for the purpose of securing the payment, in the manner provided, of the reduced amount represented by the new bonds.

From what it has been said it will be seen that in my judgment the complainant has an adequate remedy at law. If payment of the past-due interest on the compromise bonds shall be refused on demand, the complainant can declare in an action at law upon the original bonds. No discovery is necessary, for the bill shows that the complainant can describe the bonds and other evidences of debt with sufficient particularity to enable it to prove the sum due thereon, and it can aver that they are in the possession of the county, or have been by it lost or destroyed.

If, in such a suit, the county shall fail to produce said bonds upon being notified to do so, it will be competent for complainant to prove their contents by secondary evidence. The fact that the bonds surrendered to the county at the time of the compromise may appear to have been by it cancelled, will not defeat the complainant's right of action. Proof may be offered, and will be admissible, to prove that the cancellation was in pursuance of the contract of compromise and is of no force or effect.

As to the second class, to-wit, bonds issued under the act

of March, 1875, and the act supplementary thereto, these appear to have been issued in lieu of county scrip surrendered. Subsequently to their issue, the supreme court of Arkansas held that the said act of March, 1875, and the supplementary act, were void. Still, it is clear that complainant held a valid claim against the county, for, if the bonds were invalid, it was at liberty to seek its remedy upon the original debt represented by the surrendered scrip. It seems to be conceded by counsel on both sides that the bonds issued under the act of March, 1875, based, as they were, upon a valid, pre-existing debt, could lawfully be funded under the act of March 6, 1877. The point made by complainant's counsel is that the decision of the supreme court in *Brodie et al.* v. *McCabe, Collector,* does not permit the county to carry out the contract of compromise, as to these bonds, by carrying into them the obligations of the contracts upon which they are founded, and out of which they grew, to-wit, the county scrip aforesaid. In this I think the counsel is wrong. The original debt, for which these bonds were issued, was subject to the limitations as to taxation, for its payment, contained in the ninth section of article 16 of the constitution of 1874.

The supreme court has in that case decided that the bonds were issued subject to that limitation, and it has decided nothing more. The contract between the parties, referred to in the first part of this opinion, will, as respects this class of bonds, be carried out by a levy up to the limit of the constitution, for as to them the original contract provided no other or better remedy. It follows that the complainant's remedy as to these bonds is at law.

**The demurrer to the bill and amended bill is sustained.**